Hon. EDGAR N. HARWOOD, ⎫
Hon. WILLIAM H. DE WITT, ⎬ Associate Justices.
                         ⎭

---

## METCALF ET AL., RESPONDENTS, v. PRESCOTT ET AL., APPELLANTS.

MINES AND MINING — *Location notice — Permanent monument.* — The question as to whether an object described in a notice of location of a mining claim is a permanent monument is a matter for proof, and cannot be determined by the court from an inspection of the location notice. (*Russell* v. *Chumasero*, 4 Mont. 317; *O'Donnell* v. *Glenn*, 8 Mont. 248, affirmed.)

SAME — *Location notice — Erroneous description.* — Where the name of the county in which a mining claim is situated and recorded is not required by law, or by the rules or customs of miners, to be stated in the location notice, and is not necessary to find or identify the claim, an error in stating the name of the county is harmless, and does not vitiate a description otherwise good. (*Gamer* v. *Glenn*, 8 Mont. 371; *Flavin* v. *Mattingly*, 8 Mont. 246; *Upton* v. *Larkin*, 7 Mont. 449; *Garfield M. & M. Co.* v. *Hammer*, 6 Mont. 53, cited.)

SAME — *Location notice — Surplusage.* — Where an instrument, as a location notice, contains a sufficient description to ascertain the premises to which it applies, without the aid of a portion of the description, which is false, the latter portion may be regarded as surplusage.

SAME — *Location notice — Sufficiency of affidavit.* — A location notice, the affidavit to which does not contain notarial evidence that the party making it took an oath, or was ever present before the officer, is not a "declaratory statement in writing on oath," within the meaning of section 1477, fifth division of the Compiled Statutes. (*Murray* v. *Larabie*, 8 Mont. 212, distinguished.)

SAME—*Location notice*—*Evidence*—*Record.*—Section 1477, fifth division of the Compiled Statutes, providing that the locator of a mining claim shall make and file for record a declaratory statement in writing on oath, requires the oath to be part of the record, and evidence *aliunde* the statement that the oath was taken after location and before recording is inadmissible.

*Appeal from Fifth Judicial District, Jefferson County:*

Judgment was rendered for the plaintiffs below by GAL-BRAITH, J.

Defendants appeal from the judgment and an order sustaining plaintiffs' demurrer and motion to strike from the answer.

Statement of the case, prepared by the judge delivering the opinion.

The action is a contest between claimants of mining ground on the public domain of the United States. The plaintiffs below, respondents here, relied upon their claims of the Ida May and Corbett lodes. They were contested by the defendants, appellants here, with their New Brunswick and Crucible lodes.

The gist of the case was reached by the partial sustaining of a demurrer to the answer, and a motion to strike out a portion of the same. Therein the court settled propositions hereinafter stated, and the trial following was *pro forma.*

Four points were argued by counsel, which with the facts upon which they are presented are:—

1. The location notice of the Crucible lode states, among other things: "This lode is situated in Vaughn's unorganized mining district, Lewis and Clarke County, Montana Territory, and the discovery shaft is 335 feet from the west end of the claim. . . . . The exterior boundaries of this location are distinctly marked by posts or monuments at each corner of the claim, so that its boundaries can be readily traced, viz.: 'Beginning at the N. E. corner, from which corner No. 4, survey No. 889, bears northerly about one mile; thence westerly 1500 feet to post marked N. W. corner Crucible; thence southerly 600 feet to post marked S. W. corner Crucible; thence 1500 feet to post marked S. E. corner Crucible; thence northerly 600 feet to post marked N. E. corner Crucible, and place of beginning.'"

As to this description the defendants plead, in their answer: "That the corner No. 4 of said survey No. 889, referred to in the said Crucible notice of location as being about a mile distant therefrom, lies wholly within the said county of Jefferson, is a fixed, definite, and permanent monument, and taking the said notice of location, and starting at the initial point named, from the calls of said notice, one would of necessity, and without uncertainty, find the said claim in the county of Jefferson."

It further appears from the answer that the notice of location was duly filed in the office of the county recorder of Jefferson County, and not of Lewis and Clarke.

The court held that this location notice was not competent, as not entitled to record in Jefferson County, by reason of the statement in the notice that the claim was situated in Lewis and Clarke County; and also that the allegation and proposed proof that said corner No. 4 shows the claim to be in Jefferson County was incompetent. This is assigned as error.

2. The location notice of the New Brunswick shows these facts. The notice itself is signed by the locators. Then appears an unsigned affidavit as follows: —

"TERRITORY OF MONTANA, COUNTY OF LEWIS AND CLARKE. } *ss.*

"Charles K. Cole, being duly sworn, says that he is of lawful age, and one of the locators and claimants of the foregoing quartz lode mining claim; that said location is made in good faith; and that the matters set forth in the foregoing notice by him subscribed are true.

[Notarial Seal.]        "ERASTUS D. EDGERTON, "Notary Public in and for Montana Territory."

Said Charles K. Cole was one of the locators, as appears upon the notice. The notice was recorded in Jefferson County. It further appears by averment of the answer "that said Charles K. Cole, the person named as affiant in the affidavit attached to said notice of location, in truth and in fact, swore to the same before a notary public, Edgerton, therein named, prior to the record thereof, and subsequent to January 2, 1885."

The District Court held that this notice not being sworn to, was not entitled to record, and defendants could not claim title thereunder. This conclusion must have been reached by taking

the face of the affidavit alone and disregarding the *aliunde* matter pleaded in the answer. This is assigned as error.

3. The New Brunswick was located January 2, 1885, and recorded February 5, 1885. The record was more than twenty days after the location. But it appears "that between January 2, 1885, and February 5, 1885, no person whomsoever occupied, possessed, or endeavored to assume to occupy or possess the claim, or any part or portion of the said New Brunswick lode, other than the said locators above named." Was the record, under these circumstances, made in time?

4. The Ida May location notice states: "This lode is situated in unorganized mining district, Jefferson County, Montana Territory, and the claim is situated about one mile southeasterly of the Peerless Jennie Mine. The joining claims are the Corbett quartz claim on the east; no others known." The Corbett location notice states: "This lode is situated in Frowner's unorganized mining district, Jefferson County, Territory of Montana, and the adjoining claim is the Leslie on the north."

The point is made that these descriptions are not "by reference to some natural object or permanent monument, as will identify the claim." (Rev. Stats. U. S. § 2324.)

An opinion upon these two last points is not required for a decision of the case; but they will be treated for the reason set forth in the opinion below.

*Toole & Wallace,* for Appellants.

The manifest mistake in the name of the county, if recorded in the proper one, is not such an error as would vitiate the record. The designation of the county is not required, and if the description was otherwise sufficient, and it was made in the proper county, it is valid. Being recorded in Jefferson County suggested the error, while the natural objects or permanent monuments referred to, and the location upon the surface, imparted all the information necessary to one seeking in good faith to locate upon public domain, and not interfere with the rights of others. (See Wade on Notice, §§ 184, 185; *Partridge* v. *Smith*, 2 Biss. 183; *Erickson* v. *Rafferty*, 79 Ill. 209.) If

there was any regulation of miners requiring the county to be inserted, it should have been pleaded and shown. (*Gamer* v. *Glenn*, 8 Mont. 371; *Thompson* v. *Spray*, 72 Cal. 533.) When the description is inconsistent, in some particulars being false and others true, and the latter sufficiently designates the land, those which are false and inconsistent therewith will be rejected. (*Vose* v. *Handy*, 2 Greenl. 322; 11 Am. Dec. 101; *Worthington* v. *Hylyer*, 4 Mass. 196; *Jackson* v. *Clark*, 7 Johns. 217; *Wendell* v. *Jackson*, 8 Wend. 183; 22 Am. Dec. 635.) More especially is there additional reason for excluding the county named by mistake as surplusage, when the law itself does not require it to be inserted in the record, and when the premises are upon unsurveyed lands of which the court takes judicial notice. Indeed, the record and law must be taken together, and when the law directs it to be made in the county where the premises are situate, and such record is made, it is presumed to have been done under the law, and the error in the name of the county inserted when not required to be, made apparent and manifest. This leaves us to the description contained in the record (rejecting the county as surplusage), which has too often been held to be sufficient by this court to remain an open question. (*Nourse* v. *Lloyd*, 1 Pa. St. 229; *Frost* v. *Spaulding*, 19 Pick. 445; *Moss* v. *Shear*, 30 Cal. 479; *Waterman* v. *Johnson*, 13 Pick. 261; *Owen* v. *Bartholomew*, 9 Pick. 520; *Jackson* v. *Loomis*, 18 Johns. 81; *Reamer* v. *Nesmith*, 34 Cal. 624.) If no county had been inserted in the notice of location, and it contained such a reference to natural objects or permanent monuments as would identify the claim, taking it as in this case that the location made upon the surface was such that the boundaries thereof could be readily traced, and a record made of the notice of location in the county where the claim was situated, would be not only a substantial, but literal and strict compliance with the law. If, then, the description, aside from the mistake in the county, is such as is upheld by the courts, it necessarily follows that the insertion by mistake of the wrong county (none being required to be inserted) under the authorities will be rejected as surplusage. These mineral lands, surveyed and unsurveyed, are open for exploration and occupancy as such, and the legislation of Congress is made to encourage the

development of mineral claims upon the public domain. The law should therefore receive a liberal construction, when necessary to carry out its purposes. The respondents occupy in this case an unenviable position, and as said by the Supreme Court in *Cragin* v. *Powell,* 128 U. S. 691, 700: "He either did not mean to take the appellants' claim, or he is to be considered as a man watching for the accidental mistakes of others, and preparing to take advantage of them."

The identity of the claim contemplated by the record is to refer in a general way to the vicinity of and locality where the claim can be found, aided by the stakes upon the surface by which it can be readily traced. (*Gamer* v. *Glenn,* 8 Mont. 371; *Flavin* v. *Mattingly,* 8 Mont. 246; *Upton* v. *Larkin,* 7 Mont. 449; *Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53.

The record of a deed in a proper county is enough to show a prudent man that the recital of a different county than that where the record is made is error. Especially is this so if the calls in the instrument and facts would identify the *locus in quo.* (*Partridge* v. *Smith, supra.*) The locator signed the declaratory statement, and the statutes nowhere require him to sign any affidavit, or that any *jurat* shall be appended. It simply requires that the statement so signed shall be upon oath, and the courts should go no further than the statute in this requirement. Indeed, the Supreme Court of the United States has left it an open question whether the oath required by our statute, whereby the locator is put upon his conscience before making the record, is proper legislation under the act of Congress referred to. The Constitution confining the primary disposal of the soil to the Congress of the United States, it is certainly questionable territorial legislation. But as we have seen, all that is required is that the declaratory statement shall be upon the oath of the locator, and it is nowhere required of him to make an *affidavit* or *sign his name,* or that the officer *affix* even a *jurat,* or sign his name thereto. The statute does not make any of these a part of the record of location, but upon the contrary, defines what such *record* shall be. If the statute is valid, requiring the statement to be made upon oath, the presumptions, if any arise, when placed upon record, are that the required *oath* was taken, and if not, it could be shown *aliunde,* unless the law made it an

essential part of the record itself, which is not the case here. No *affidavit* is called for, and if it was there are authorities showing that it is sufficient without being signed by the deponent. (*Shelton* v. *Berry*, 19 Tex. 154; 70 Am. Dec. 326; *Kohn* v. *Washer*, 69 Tex. 67; 5 Am. St. Rep. 28; *Haff* v. *Spicer*, 3 Caines, 190; *Jackson* v. *Virgil*, 3 Johns. 540; *Millius* v. *Shafer*, 3 Denio, 60; *Goddis* v. *Durashy*, 1 Green, 324; 6 Ves. 431; 7 Turn. & R. 315; *Delabigarre* v. *Bush*, 2 Johns. 490; *Ede* v. *Johnson*, 15 Cal. 57.)

When an oath is reduced to writing and signed by the deponent, and the *jurat* of an officer appended, it is an affidavit. The court has proceeded in this case upon the theory that this was required, when an oath without signature or *jurat* is all that is mentioned in the statute. An affidavit includes an oath, but an oath does not *necessarily* include, but may be by affidavit. (*Burns* v. *Doyle*, 28 Wis. 460; *Shelton* v. *Berry*, 19 Tex. 154; 70 Am. Dec. 326; *Crist* v. *Parks*, 19 Tex. 234; 1 Bur. Prac. [2d ed.] 342; *Noble* v. *United States*, Dev. Ct. Cl. 84 [311]; Bouvier's Law Dict. tit. "Affidavit"; 1 Bacon's Abridgment, tit. "Affidavit.") Recurring again to the question of the sufficiency of the monuments referred to in the record, in connection with the marking out of the surface to identify the claim, we cite the court to the following authorities: *Newhill* v. *Whitefield*, 63 Cal. 81–85; *North Noonday Min. Co.* v. *Orient Min. Co.* 6 Sawy. 503; *Inpetor Min. Co.* v. *Bodee & Co.* 11 Fed. Rep. 666; *Faxon* v. *Barnard*, 4 Fed. Rep. 702; *Gilpin Co.* v. *Drake*, 8 Colo. 586; *Craig* v. *Thompson*, 10 Colo. 517–525.

*Shober & Rowe*, and *Comly & Foote*, for Respondents.

The New Brunswick location notice does not purport to be sworn to before any qualified officer. Upon its face it is a nullity. (*Smart* v. *Howe*, 3 Mich. 590; *State* v. *Green*, 15 N. J. L. 88; *Ladow* v. *Groom*, 1 Denio, 429; Comp. Stats. § 672, p. 235, et seq.) There is no authority of law for recording an unverified notice of location. The notice should be verified. (Comp. Stats. § 1477, p. 1054; *McBurney* v. *Berry*, 5 Mont. 300.) The record of an instrument is notice only when required to be recorded by law. (*Reed* v. *Coale*, 4 Ind.

283.) Record is not notice if certificate of acknowledgment is defective. (*Harper* v. *Reno*, 1 Freem. [Miss.] 323.) The notice of location of the Crucible lode shows the said lode to be located in Lewis and Clarke County. The transcript does not show that it was recorded in *any* county. Were it recorded in Jefferson County, then there is nothing on the face of the instrument to indicate that the lode is situated in any other than Lewis and Clarke County, State of Montana. The record in Jefferson County would be a nullity. Neither upon its face nor in the subject-matter of the instrument is there anything to authorize the record of the same in Jefferson County, and therefore such record would be a mere nullity and notice to no one. (*Parret* v. *Shaubhut*, 5 Minn. 323; *Latly* v. *Holland*, 1 Swan, 396; Martindale's Law of Conveyancing, § 271, p. 228; *Taylor* v. *Harrison*, 47 Tex. 454.) The very purpose of our statutes is to give notice. (See Comp. Stats. Mont. § 1477, p. 1054.) There is no authority of law to authorize the clerk to record an instrument not affecting land in his own county, and a copy of the record of such instrument authenticated by the clerk is not competent evidence of the original. (*Pollard* v. *Lively*, 2 Gratt. 216.) One of the essential steps to perfect a mining claim location is to record a verified notice of location, and a notice of location not verified is not entitled to be recorded. Neither of the notices of location have been recorded by authority of law, and they are nullities; hence appellants have never perfected either location by recording. (*Strepey* v. *Stark*, 7 Colo. 614; § 1477, p. 1054, Comp. Stats.; *Russell* v. *Hoyt*, 4 Mont. 412; *McBurney* v. *Berry, supra; O'Donnell* v. *Glenn*, 8 Mont. 248.)

Appellants seek to claim the Ida May lode in Jefferson County by virtue of a notice of location of the Crucible lode, situated in Lewis and Clarke County. Courts cannot adopt a construction of any legal instrument which shall do violence to the *rules of language* or the *rules of law*. (2 Parsons on Contracts, pt. 11, ch. 1, § 2.) If Lewis and Clarke County were stricken out, then the instrument would present a patent ambiguity, for it would be necessary to add another county to perfect the description. "When the mere perusal of the instrument shows plainly that something must be added before the reader can determine which of several things is meant by it,

then the rule is inflexible, that no evidence to supply the omission can be admitted." (*McNair* v. *Toler*, 5 Minn. 435, et seq.; Martindale's Law of Conveyancing, § 88, p. 77.) Vague and indefinite descriptions, without official survey to give certainty to locations, creates no right of private property in any particular parcel of land. (*United States* v. *King*, 3 How. 773.) In general, the omission of the words "before me" in the *jurat* in the affidavit avoids the affidavit. (*Smart* v. *Howe*, 3 Mich. 590.) An affidavit must *appear upon* its face to have been taken *before* the proper officer, and in compliance with all legal requirements. (*State* v. *Green*, 15 N. J. L. 88; *Ladow* v. *Groom*, 1 Denio, 429; § 672, p. 235, Comp. Stats. Mont.) One of the necessary requirements to perfect a location is to record the notice of location. It is constructive notice of claim. (*Strepey* v. *Stark*, 7 Colo. 614; Comp. Stats. Mont. § 1477, p. 1054; *Russell* v. *Hoyt*, 4 Mont. 412.) It is a settled principle that courts of equity will not rectify a mistake in a written instrument by the aid of parol evidence, except as between the original parties. (Story's Equity Jurisprudence [10th ed.], p. 166, § 165.) In this case appellants and respondents are strangers.

The case cited by defendants in 2 Biss. 183, is inapplicable. In that case the proper county was set out in the instrument recorded. In this case the wrong county is designated in the instrument, and further, there is no description otherwise to indicate that the lode claim was situated in any other than Lewis and Clarke County. In matters of description it is settled that parol evidence will not be admitted to contradict or control the language of a deed. (*Means* v. *Presbyterian Church*, 3 Watts & S. 303; *Hall* v. *Davis*, 36 N. H. 569.) When the location of the land is clearly ascertained by a sufficient description, admitting of but one construction, it cannot be controlled by evidence of intent, or acts and declarations of the parties, tending to establish a different location or another designation. (*Jennings* v. *Brezeadine*, 44 Mo. 332; *Jackson* v. *Perrine*, 35 N. J. L. 137; *McAfferty* v. *Conover*, 7 Ohio St. 99; *Weill* v. *Lucerne Min. Co.* 11 Nev. 200.)

DE WITT, J. — We will discuss the points in the order outlined in the foregoing statement of the case.

1. The Crucible claim was situated in Jefferson County. Its notice of location was recorded in Jefferson County. Its location description names corner No. 4 of the survey No. 889, which corner defendant alleges lies wholly within Jefferson County; and further alleges that the described courses and distances, when run by reference to this survey corner No. 4, locate the claim wholly in Jefferson County. It is not for the court to say, from an inspection of the location notice, whether or not this survey corner was a permanent monument. This is a matter for proof. (*Russell* v. *Chumasero*, 4 Mont. 317; *O'Donnell* v. *Glenn*, 8 Mont. 248.) Then, if defendants had been allowed to attempt to prove this, as they had the right to do, and had succeeded, they would have been in this position: they would have shown where their claim was by reference to a permanent monument; they would have shown thereby that it was in Jefferson County, the county in which they had properly made their record. Are they to lose their claim because they stated in their notice that the premises were in Lewis and Clarke County? The statement of the county in the notice is not required by law, nor does it appear that it was required by any rules of miners consistent with the laws of the United States, or the then Territory, nor is it necessary, in this case, in order to find or identify the claim. It was surplusage. Does this surplusage vitiate an otherwise good description and a legal recording? *Falsa demonstratio non nocet.* (See cases in 2 Parsons on Contracts [5th ed.], 555, n. *d.*, and p. 514.) The rule applies the more forcibly in a case, as that before us, where the false description is surplusage. "So much of the description as is false is rejected, and the instrument will take effect, if a sufficient description remains to ascertain its application." (1 Greenleaf on Evidence, § 301, and cases cited; also Wade on Notice, §§ 184, 185; *Partridge* v. *Smith*, 3 Biss. 183; *Worthington* v. *Hylyer*, 4 Mass. 195; *Jackson* v. *Loomis*, 18 Johns. 31; *Reamer* v. *Nesmith*, 34 Cal. 624.)

There can be no doubt that if defendants be successful in proving what they allege to be the fact as to a permanent monument, the description is sufficient, and the error in stating the county under the circumstances of this case is harmless. We are satisfied that the District Court erred. The notice of

location is competent, and proof whether the corner No. 4 of survey No. 889 be a permanent monument is competent. Upon the subject of description of mining claims see *Gamer* v. *Glenn,* 8 Mont. 371; *Flavin* v. *Mattingly,* 8 Mont. 246; *Upton* v. *Larkin,* 7 Mont. 449; *Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53.

The foregoing is sufficient for the decision of this appeal, but as the case goes back for further proceedings, we will express our views upon the additional points raised as a guide to the District Court in the further consideration of the case, and, therefore,—

2. The next point is whether the location notice of the New Brunswick claim is defective, by reason of the condition of the verification. This court, after incidentally doubting the validity of the law of the territory requiring a location notice to be verified (*Wenner* v. *McNulty,* 7 Mont. 30), afterwards, in *O'Donnell* v. *Glenn,* 8 Mont. 248, met the proposition squarely, and held the law to be good. While we can conceive doubts as to this power of the territorial legislature, we do not feel it our duty to disturb the rule in *O'Donnell* v. *Glenn,* and the practice established upon that rule. We therefore sustain the law, which is as follows:—

"Any person or persons who shall hereafter discover any mining claim upon any vein or lode, etc., . . . . shall, within twenty days thereafter, make, and file for record in the office of the recorder of the county in which said discovery or location is made, a declaratory statement thereof, in writing, on oath made before some person authorized by law to administer oaths describing such claim in the manner provided by the laws of the United States." (§ 1477, p. 1054, Comp. Stats.)

The question then arises, is the location notice of the New Brunswick, with its attachment, "a declaratory statement in writing on oath?" It is "a declaratory statement in writing;" and if it is properly "on oath," the verification by Cole, one of the locators, is sufficient, without his co-locators joining with him. (*Wenner* v. *McNulty, supra.*)

An affidavit is one method of taking an oath. An affidavit is "a statement or declaration reduced to writing, and sworn or affirmed to before some officer who had authority to administer an oath." (Bouvier's Law Dict.)

Appellant cites *Shelton* v. *Berry*, 19 Tex. 154; 70 Am. Dec. 336; *Jackson* v. *Virgil*, 3 Johns. 540; *Millius* v. *Shafer*, 3 Denio, 60; *Ede* v. *Johnson*, 15 Cal. 57; *Burns* v. *Doyle*, 28 Wis. 460; and *Crist* v. *Parks*, 19 Tex. 234, to the effect that the affidavit need not be signed. But the want of signature to this paper is not its most serious defect, if it be attempted to view it as an affidavit. There is no *jurat* thereto. It does not appear by the hand of the notary that the paper was either subscribed or sworn to, or that the party was ever present before the officer. We are not cited to any authority, or given any reason that would warrant us in holding this paper to be an affidavit. In all the cases presented by appellants (last *supra*), there appeared some sort of authorization or certification from the notary, which evidenced the oath having been taken. In the paper before us there is nothing but the notary's name and official title. It does not appear that the party took an oath, or was ever present before the officer. We cannot call this an affidavit, or an oath by virtue of an affidavit, or by virtue of any certification. But appellants urge that an affidavit is not required, but only a statement on oath. Granted for the argument's sake; but have we any statement on oath? We have no notarial evidence of such fact. If the notary had officially certified, attested, or declared, in any manner, that the locator made the statement on oath, we would be inclined to view the matter more favorably. Certainly there is nothing whatever on the paper to remotely indicate that Charles K. Cole, the locator, made the statement on oath.

In *Murray* v. *Larabie*, 8 Mont. 212, there appeared at the end of a deposition an alleged certificate. It was signed by the deponent, and then followed: —

"Sworn to and subscribed before me this eighteenth day of February, 1885.

[Notarial Seal.]                "OMERE VILLERE, Not. Pub."

The court held "the simple statement at the end of the deposition of 'sworn to and subscribed before me' is no certificate of anything, except that the witness swore to and subscribed his name to the deposition." If, under those circumstances, the notary certified to nothing, except that the deposition was sub-

scribed and sworn to, then we must hold that, in the case at bar, the simple signature of the notary, without even the *jurat*, which was present in the case of *Murray* v. *Larabie, supra,* did not certify to anything.

We are of opinion that the paper before us is not, intrinsically, a declaratory statement on oath. But counsel offer to prove *aliunde* the notice, that the oath was taken after location and before recording. Let it be remembered that the statute (§ 1477, Comp. Stats.) requires that the locator shall "make and file for record a declaratory statement in writing on oath." It shall not only be made "on oath," but "filed for record on oath." We are of opinion that the statute intends that the oath shall be part of the record. Without directly so declaring, there seems to be a strong implication from analogy to other recording laws, that one office of the oath is to entitle the instrument to record. We believe that any other view would open the door to abuses, mischiefs, and errors. Suppose notices may be recorded with no affidavit or certificate of oath, although the oath may have been actually taken by the party. There would be no official evidence preserved of the act of the officer taking the oath, and titles to valuable mining property would be made to depend upon the doubtful memories of notaries public, and perhaps years after the event, or even after the death of the notary; and the temptation would be opened to such officers to remember or forget, as interests ulterior to their duties might sway them. We feel that it is utterly unsafe to sanction such a practice. We are of opinion that the view of the District Court, as to the New Brunswick location notice, was correct, and we affirm that ruling.

, 3. It is conceded by respondents in their brief, that they claim no rights by virtue of the fact that their adversary claim, the New Brunswick, was not recorded within twenty days after discovery. That disposes of this point.

4. Under the view expressed in paragraph 1, above, and on the authority of *Russell* v. *Chumasero, supra,* it must be held that, in the location notices of the Ida May and Corbett claims, the reference to adjoining claims is sufficient to allow the notices to be introduced in evidence, and proof to be offered, whether such adjoining claims are permanent monuments.

The judgment is reversed and the cause is remanded for further proceedings, in accordance with the views herein expressed.

BLAKE, C. J., and HARWOOD, J., concur.