No. 84-556

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

CATHERINE O'CONNOR, individually
and as Personal Representative
of the Estate of Alfred Fisher,
Deceased; RALPH FISHER, et al.,

Plaintiffs and Respondents,

-vs-

JOHN F. WILKE, CARL L. CARAKER,
and ROBERT A. WILKE,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Schulz, Davis & Warren; John Warren, Dillon,
Montana

For Respondents:

Burgess, Joyce & Whelan; Thomas Joyce, Butte,
Montana

---

Submitted on Briefs: June 7, 1985

Decided: August 29, 1985

Filed: AUG 29 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In the action below, Catherine Fisher O'Connor individually, and as Personal Representative of the Estate of Alfred Fisher, together with Ralph Fisher, David Fisher and Phyllis Fisher Crnkovich (hereinafter Fishers) initiated this action seeking to quiet title to four mining claims. John Wilke, Carl Caraker and Robert Wilke (hereinafter Wilkes) contested the action claiming they were the owners of the four claims. The District Court of the Fifth Judicial District, Beaverhead County, sitting without a jury, the Honorable Frank M. Davis presiding found for the Fishers and awarded them title and possession of the four mining claims. From this judgment the Wilkes appeal.

The parties dispute the ownership of four unpatented mining claims situated approximately ten miles southeast of Wisdom, Montana. The disputed claims are identical, although the parties do not always refer to them by the same names.

Fishers are the successors in interest of the late Alfred Fisher who was the undisputed owner of four unpatented mining claims located in Beaverhead County, Montana, namely the "Trapper," "Martin," "Pocahontas" and "Clara." These claims are based on properly recorded Certificates of Location dating back to the year 1948.

Since the recording of the Certificates of Location, it is undisputed by either party that the Fishers, or their predecessors in interest, have travelled annually to the claims and performed assessment work valued at $100 or more. This assessment work consists of clearing roads, cleaning drainages, improving tunnels and maintaining a cabin.

It is also undisputed by either party that since the recording of the Certificates of Location, the Fishers, or their predecessors in interest, have filed with the

2

Beaverhead County Clerk and Recorder the required affidavits of performance of annual assessment work. The only exception, that is pertinent to this appeal, to Fishers' regular filing of these affidavits is for the year ending August 31, 1977. During this time period, Fishers failed to file any affidavit of annual work for any of their four claims. Although, as noted above, the annual work was performed by the Fishers, or their predecessors in interest, during this time period.

In the fall of 1977, the Wilkes, discovering the Fishers' failure to file the required affidavits of annual work for that mining year, relocated a claim on the "Clara" on November 27, 1977, renaming it the "Deana." The Wilkes adopted the Fishers' discovery site, reestablished its corners, and recorded their Certificates of Location on November 28, 1977, in the office of the Beaverhead County Clerk and Recorder. Similarly, the Wilkes, motivated by the absence of the other affidavits of annual work, proceeded to relocate on December 31, 1977, the "Trapper," "Martin" and "Pocahontas" renaming the latter the "Mink." The Wilkes properly recorded their Certificates of Location with the Beaverhead County Clerk and Recorder on February 7, 1978.

Since the Wilkes relocated the four mining claims in the fall of 1977, both parties have performed the annual assessment work and filed the appropriate affidavits. The Fishers subsequently brought this lawsuit seeking to quiet title to the four mining claims. The issue presented on appeal is whether the failure of the Fishers to file an affidavit of performance of annual assessment work on the four mining claims for the year ending August 31, 1977, caused a forfeiture of their interests, thereby making the claims open for relocation by the Wilkes.

The thrust of the Wilkes' argument that the Fishers forfeited their interests in the mining claims for failure to file an affidavit of annual work centers around the wording of § 82-2-103, MCA. This statute provides in part pertinent to the case at bar as follows:

> Affidavit of performance of annual work: (1) The owner of a lode or placer claim who performs or causes to be performed the annual work or makes the improvements required by the laws of the United States . . . in order to prevent the forfeiture of the claim, must, within 90 days after the expiration of the federal annual assessment work period, file in the office of the county clerk of the county in which such claim or claims is situated an affidavit of his own or an affidavit of the person who performed such work or made the improvements . . .

> . . .

> (4) . . . Such affidavit or a certified copy thereof is prima facie evidence of the facts therein stated. The failure to file such affidavits within the period allowed therefor shall be prima facie evidence that such labor has not been performed and that the owner of the claim or claims has abandoned and surrendered same.

As the statute itself indicates, § 82-2-103, MCA, was enacted to supplement Federal statutory law. The Federal Act it supplements is the Mineral Lands and Mining Act, 30 U.S.C.§ 28. This act specifies how a mining claim is preserved:

> [O]n each claim located after the tenth of May, 1872 and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year . . . and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open for relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location . . . The period within which the work required to be done annually on all unpatented mineral claims located since May 10, 1872, including

4

> such claims in the Territory of Alaska,
> shall commence at 12:00 o'clock meridian
> on the first day of September succeeding
> the date of location of such
> claims . . .

Thus, 30 U.S.C. § 28 imposed the requirement that $100 worth of labor had to be performed or improvements made on each claim annually in order to preserve the possessory right to the claim. In addition, the Federal statute states that if the assessment work is not done in a given year, but if the original locator resumes working on the claim, the dereliction of the year before is forgiven if the work is resumed before relocation. Thus, the Federal statute simply requires the work to be done annually. If the work is not done the claim is open for relocation. If the work is done the claim is not open for relocation.

The Wilkes do not dispute the fact that the Fishers performed the required assessment work on each of the four claims. The Wilkes concede that annually, including the year ending August 31, 1977, the Fishers travelled to the claims and performed and made improvements amounting to at least $100. Instead, the Wilkes argue that because the Fishers failed to file an affidavit of annual work for the year ending August 31, 1977, the Fishers' claims were forfeited under § 82-2-103, MCA. The Wilkes assert that under the wording of § 82-2-103, MCA, the legislature unequivocally mandated a forfeiture of Fishers' interest in their claims for failure to file their affidavit of annual work.

In support of their interpretation of § 82-2-103, MCA, the Wilkes rely on the change of wording by the 1971 legislature of then § 50-704, R.C.M. (1947), which substituted the permissive word "may" for the mandatory word "must" with reference to the filing with the clerk and recorder of the affidavit of annual work. The amendment has now been codified as § 82-2-103, MCA. Although this Court

5

posed the question of the legal effect of this amendment in Sawyer-Adecor International, Inc. v. Anglin (1982), 198 Mont. 440, 646 P.2d 1194, we deferred interpretation of the new language because we ruled that § 82-2-103, MCA, did not come into play and was irrelevant in this particular case. The case at bar, however, presents an opportunity for this Court to interpret the new language of § 82-2-103, MCA.

In Sawyer-Adecor International we developed the history of § 82-2-103, MCA, by exploring the language of former § 50-704, R.C.M. (1947). We stated that former § 50-704 provided that the owner of a load or placer mining claim who performed the annual assessment work "may" file in the office of the county clerk and recorder where the claim was situated an affidavit showing the nature and character of the work that had been done on the mining claim. Section 50-704 further provided that "such affidavits . . . are prima facie evidence of the facts therein stated."

While the former § 50-704, R.C.M. was in effect this Court decided Coleman v. Curtis (1892), 12 Mont. 301, 30 P. 266, which held that complying with the statute was merely a means of preserving prima facie evidence that the assessment work requirements had been fulfilled. Later in 1895 came Davidson v. Bordeau (1895), 15 Mont. 245, 38 P. 1075, in which this Court decided that while the affidavit of annual work was prima facie evidence that the assessment work had been done, oral evidence could be given to prove that the work had been done without regard to the affidavit. Hence, it was the established law in Montana for seventy-six years that if one performed the federally required assessment work that the possessory rights to the claim were preserved.

As stated above, § 50-704, R.C.M (1947), was subsequently amended by the legislature in 1971, and is now carried forward as § 82-2-103, MCA. The effect of the 1971

amendment, as this Court explained in <u>Sawyer-Adecor International</u>, is that whereas under § 50-704 the filing of an annual affidavit was permissive ("may") it is now under § 82-2-103, MCA, mandatory ("must"). In addition, the last sentence of § 50-704 which provided that "such affidavits . . . are prima facie evidence of the facts therein stated" was retained by the 1971 amendment verbatim. And furthermore, the 1971 amendment added this provision as the last sentence to § 82-2-103, MCA: "The failure to file such affidavits within the period allowed therefor shall be prima facie evidence that such labor has not been performed and that the owner of the claim has abandoned or surrendered same."

In reviewing the case law and language of former § 50-704, R.C.M. (1947), and the new language of § 82-2-103, MCA, it is clear to this Court that it is the assessment work and not the affidavit of annual work that controls. We agree with the District Court that the omission of the affidavit is only prima facie evidence that the assessment work was not performed. We do not agree with the Wilkes' argument that the legislature in adopting § 82-2-103, MCA, unequivocally mandated a forfeiture of Fishers' interest in their mining claims for failure to file their affidavit of annual work. The Wilkes ignore the last sentence of § 82-2-103, MCA, which says that the omission to file an affidavit is "prima facie evidence that such labor has not been performed." Since the work was admittedly performed, this Court holds that the Fishers' claims were not subject to forfeiture because of the failure to file one affidavit in a period of over thirty years. Certainly the Fishers' claims were never abandoned.

Thus we hold that while § 82-2-103, MCA, made the filing of an affidavit of annual work mandatory, the penalty for failure to comply with the mandate requires the owner to

assume the burden of proving that he did in fact locate the claim and that he did the assessment work within the federal mining year. In the case at bar the Fishers proved the work was done, the Wilkes conceded the work was done, and the trial court found the work was done. Hence, the presumption that the work was not done was contradicted and overcome by other evidence. Since the work was done the federal statutory requirement was met (30 U.S.C. § 28) and the plaintiffs are entitled to keep their possessory rights to the claims against all but the United States.

The judgment of the District Court is affirmed.

John Conway Harrison
Justice

We concur:

Justices